UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBORAH J. COBB,

                              Plaintiff,

v.                                                             5:13-CV-00591

                                                                                (LEK/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Amdursky, Pelky Law Firm<br>*Counsel for Plaintiff*<br>26 East Oneida Street<br>Oswego, NY 13126 | GREGORY R. GILBERT |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>Room 218<br>James T. Foley U.S. Courthouse<br>Albany, New York 12207 | MONIKA K. CRAWFORD<br>Special Assistant United States Attorney |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 | STEPHEN P. CONTE, ESQ.<br>Chief Counsel, Region II |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# REPORT AND RECOMMENDATION

     This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, United States Senior District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the decision of the Commissioner be affirmed.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is fifty-two years old, and has a high school diploma. (T. at 28-29.) She worked as a custodian for Nestlé for twenty years, until the plant in the area closed. (T. at 34.) Plaintiff also had occasional work on an assembly line packing boxes of chocolate. (T. at 38.) Since the closing of the plant, she has worked at a number of part-time jobs. (T. at 41.) Plaintiff alleges disability due to heart problems, diabetes, anxiety, and depression. (T. at 11.)

Plaintiff applied for disability insurance benefits and SSI on July 22, 2010. (T. at 9.) The application was denied on November 24, 2010. (T. at 76.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 84.) The hearing was held on October 19, 2011. (T. at 24.) On December 9, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 17.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 27, 2013. (T. at 1.) Plaintiff commenced this action on May 22, 2013. (Dkt. No. 1.)

**II.   APPLICABLE LAW**

**A.    Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful

2

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2012)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education,

3

and past work experience), and to determine whether the claimant is
capable of performing other jobs existing in significant numbers in
the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c),
416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. THE ALJ'S DECISION

Here, the ALJ found that Plaintiff was not disabled because she retained the Residual Functional Capacity ("RFC") to perform her previous relevant work as a custodian as it was actually performed. (T. at 17.)

The ALJ found that Plaintiff's severe impairments consisted of a history of myocardial infarction, insulin-dependent diabetes mellitus, depression, and anxiety. (T. at 11.) He then found that Plaintiff's impairments did not meet or medically equal the severity of the listed impairments in the regulations. (T. at 12.) He found that Plaintiff retained the RFC to perform light work, and in so doing also determined that, while the alleged symptoms could be traced to

5

medically determinable impairments, Plaintiff's statements about the severity of the impairments were not fully credible. (T. at 14.) The ALJ gave only partial weight to the medical opinion of Dr. Patil, Plaintiff's treating psychiatrist, as it pertained to Plaintiff's RFC, because the questionnaire dated September 9, 2011, was inconsistent with the medical and other evidence of record, including Dr. Patil's own treatment records. (T. at 16.) The ALJ then found, at step four of the analysis, that Plaintiff's RFC allowed her to perform her past relevant work as a custodian as it was actually performed, and she was therefore not disabled. (T. at 17.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by (1) improperly weighing the opinion of Dr. Patil; (2) incorrectly finding that Plaintiff's symptoms did not meet the listings at step three; (3) incorrectly finding that Plaintiff could perform her past relevant work at step four; and (4) incorrectly finding that Plaintiff was capable of performing light work.[1] (Dkt. No. 8.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed. (Dkt. No. 11.) For the reasons discussed below, it is recommended that the ALJ's decision be affirmed.

## V. DISCUSSION

### A. Opinions of Dr. Patil

Plaintiff argues that the ALJ should have given controlling weight to the opinions of Dr. Patil. (Dkt. No. 8 at 5.) Defendant responds that the ALJ "properly found that they were not due

---

[1] It is noted that Plaintiff's memorandum of law characterizes Plaintiff's arguments under an abuse of discretion standard. The proper standard for this appeal determines whether the ALJ used the proper legal standard and whether the decision is supported by substantial evidence. *Featherly*, 793 F. Supp. 2d at 630. This Court interprets Plaintiff's arguments under this proper standard.

controlling or significant weight. (Dkt. No. 11 at 16.[2])

Initially, it is noted that both parties (and the ALJ) refer to a questionnaire dated September 14, 2011, when referring to Dr. Patil's opinions. (T. at 338-343.) However, the Court notes that there is no indication that this document was, in fact, filled out by Dr. Patil or any recognized medical professional, other than the assertions by the Plaintiff that this is so. (T. at 25.) The document has no name on its letterhead, and the area below the signature meant for a printed name on the signature page is blank. (T. at 343.) Furthermore, the signature on that page is not the same signature which appears on all of Dr. Patil's treatment notes. (T. at 343; *see* T. at 344, 346, 348, 350, 353, 355, 364, 366.) While Plaintiff's attorney claimed at the hearing to recognize the signature as Dr. Patil's, it does not resemble his other signatures. (T. at 25.) The attorney also stated that he would attempt to send the document back for verification, but this has apparently not been done. *Id*. It is therefore impossible to say whether the opinions in this document are actually those of Dr. Patil. However, this Court does not reach the issue, because even assuming *arguendo* that Dr. Patil did sign this document, it is inconsistent with the medical and other substantial evidence. For the reasons outlined below, it is recommended that the decision of the ALJ in this respect be affirmed.

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)

---

[2] Page numbers in citations to Defendant's memorandum of law refer to page numbers in the original document, and not those assigned by the Court's electronic filing system.

(internal citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2). Furthermore, "an ALJ is free to . . . choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998.) However, an ALJ must provide good reasons for the weight given to the treating source's opinions. SSR 96-2p.

Here, the ALJ explained that the opinions provided in the mental impairment questionnaire, presumably signed by Dr. Patil and dated September 14, 2011, were "not consistent with his own treatment records and not supported by the substantial weight of the evidence." (T. at 16.) The document in question claimed, in part, that Plaintiff:

> . . . has symptoms of depression, such as decreased energy, emotional lability, mood disturbance and personality changes, psychomotor retardation, feelings of worthlessness and guilt[], hostility, irritability, and flat, blunt, or inappropriate affect . . . has slight restrictions of activities of daily living, marked difficulties in maintaining social functioning and marked deficiencies in concentration, persistence, and pace . . . [and] that the claimant's condition is a residual process that has resulted in such marginal adjustment that even a minimum increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate.

(T. at 15, citing T. at 338-40.) The document also states that Plaintiff had marked limitations in her ability to remember work-like procedures, understand, remember and carry out even very short and simple instructions, marked limitation in concentration, and difficulties in working without supervision, working in proximity to others, and making work-related decisions. (T. at 341-42.) The reasoning for these limitations was that Plaintiff "experiences breakthrough symptoms periodically" and is "unable to function consistently in the workplace and maintain employment." (T. at 342.)

Most of these opinions are not supported by substantial evidence in the record. The

document claims Plaintiff has "psychomotor retardation," which is "slowed mental and physical processes characteristic of a bipolar depressive episode . . . a generalized slowing of motor activity related to a state of severe depression or dementia . . . [and] a generalized slowing of physical reactions, e.g. eye-blinking, common in depression." *Muth-Willett v. Astrue*, No. 1:11-CV-1547 2012 U.S. Dist. LEXIS 96048, at *27-28, 2012 WL 2862614, at *9 (W.D. La. May 09, 2012) (collecting definitions from medical encyclopediae) (internal citations omitted). There are no indications of slowed physical processes in the entirety of Plaintiff's treatment at Oswego Hospital Behavioral Services ("OHBS"). (T. at 326-364.) Her admission note indicates that her bodily movement was normal. (T. at 361.) The only comments about her cognitive functioning were that it was "normal" or "intact" except for one report in which it was "okay." (T. at 344, 346, 348, 350, 353, 355.)

The document's claim that Plaintiff has "flat, blunt, or inappropriate affect" is also contradicted by the treatment notes. Plaintiff's affect was usually deemed "appropriate" by Dr. Patil and other medical staff at OHBS (T. at 344, 349, 353, 363.) Once, Dr. Patil deemed her affect "sad," and once he deemed it "okay." (T. at 346, 348.) There is no evidence to support the opinion in the questionnaire to the contrary.

The claim that the Plaintiff has marked difficulties in concentration, persistence, and pace, is belied by the treatment notes. At every meeting with staff of OHBS, Plaintiff maintained good eye contact, had brief and appropriate responses, and typically was alert. (T. at 344, 348, 349-350, 355.) Treatment notes indicate on multiple occasions that her concentration was good. (T. at 349, 351.) Her admission note states that she has no limitations in concentration. (T. at 361.)

9

As for the issue of decompensation, an episode of decompensation is described in the questionnaire itself as a "temporary increase in the mental impairment symptoms" which includes a loss of adaptive functioning, and which must last for at least two weeks. (T. at 339.) The longitudinal record of treatment at OHBS does not have any gaps longer than a few weeks, except for one instance in which she traveled to Florida during the summer of 2011. (T. at 329-364.) However, there is only one instance, in September 2011, when Plaintiff's symptoms appear to have increased, and there is no indication that this lasted two weeks. (T. at 346.) It is noted that, because Plaintiff was found not disabled at step four, the burden of proof at all times remained with the Plaintiff. Plaintiff has not provided any evidence indicating other incidents of decompensation, and has not met her burden to establish that this statement in the questionnaire is consistent with the treatment record.

The evidence does not support the opinion that Plaintiff "had marked limitations in her ability to remember work-like procedures, understand, remember and carry out even very short and simple instructions, marked limitation in concentration, and difficulties in working without supervision, working in proximity to others, and making work-related decisions." (T. at 338-343.) As discussed above, Plaintiff has not shown any problem with concentration, and despite being unable to continue work for stress reasons, she never testified that she was unable to perform the work required of her at those positions. (T. at 24-72.) The opinion of Dr. Noia after examining Plaintiff, was that she "is able to maintain attention and concentration for tasks, can regularly attend to a routine and maintain a schedule, she can learn new tasks, she can perform simple and some complex tasks with or without supervision, and she can understand and follow simple instructions." (T. at 272.) "[T]he report of a consultative examiner may constitute

10

substantial evidence to support an ALJ's decision." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). Furthermore, the opinion of State agency medical examiner Harding supports Dr. Noia's opinion. (T. at 304.) Harding's opinion also constitutes substantial evidence against Dr. Patil's opinion. *Leach ex. Rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Both Dr. Noia's and Dr. Harding's opinions are consistent with the treatment notes from OHBS. (T. at 326-364.)

Lastly, there is no evidence to support the statement that "even a minimal . . . change in environment would be predicted to cause the individual to decompensate." (T. at 340.) Plaintiff testified that her environment changed multiple times, sometimes quite drastically. She testified that she took a trip to Florida to attend her daughter's graduation. (T. at 68.) In fact, her treatment notes indicate that she traveled to Florida for at least a month, and rather than causing her to decompensate, the trip helped relieve her symptoms. (T. at 329.) There is also an indication that she made a second trip, although her counselor appears to have confused the location of both trips. (T. at 328.) She also relocated in April or May 2011, because of trouble with the neighbors, and this change in her environment also helped her symptoms. (T. at 326-328.) Counseling notes from Michael Herrera indicate that, in September 2011, she was moving again, was "anxious to get into her own apartment," and was "looking forward to living alone without family and relatives." (T. at 345.) Because substantial changes in Plaintiff's environment did not cause her to decompensate, there is no evidence supporting the opinion that

11

a "minimal change" in circumstance would cause Plaintiff to decompensate.

Plaintiff also argues that the record does not support the ALJ's finding that Plaintiff's condition was steadily improving throughout the treatment at OHBS. (Dkt. No. 8 at 9.) In so doing, Plaintiff implies that Plaintiff's condition has in fact been growing worse, and that this worsening is the reason why the opinion in the questionnaire appears more severe than prior statements. (Dkt. No. 8 at 5-9.) The longitudinal record does show a steady improvement in Plaintiff's condition, concurrent with adjustments to her medication. On January 6, 2011, notes indicate that her depression is out of control. (T. at 360.) In March 2011, Dr. Patil remarked she felt "slightly better." (T. at 330.) Her symptoms persisted into April 2011, and Dr. Patil increased her medication. (T. at 329.) On May 4, 2011, she reported to a nurse practitioner at OHBS that the increase helped some, and the notes that day indicate that the treatment was "heading in the right direction." (T. at 327.) On May 23, 2011, Dr. Patil remarked that her symptoms were lessened, and she appeared to be doing better. (T. at 326.) In July 2011, she reported to a different nurse practitioner that her symptoms were stable. (T. at 349.) In August, Dr. Patil noted that she is "doing very well" most of the day, and that Plaintiff reported for the most part that she is doing well. (T. at 348.)

Plaintiff *did* have an increase in symptoms in September 2011, five days before the opinion in question was issued. (T. at 346.) However, at her next visit in October (nearly a month after the opinion in question was issued), Dr. Patil again reported that Plaintiff claimed that month to be doing better, and that she only has problems with depression and anxiety "once in a while." (T. at 344.) This longitudinal treatment record is consistent with the ALJ's determination that Plaintiff's condition was steadily improving over time, despite the single

setback in September 2011.

For the reasons outlined above, the opinion in the questionnaire is inconsistent with substantial evidence of record, and therefore is not entitled to controlling or great weight under the treating physician rule. Therefore, the ALJ did not err when he afforded this opinion only partial weight.

B.     **Step Two Listings**

Plaintiff argues that the ALJ erred in finding that Plaintiff's symptoms did not meet or medically equal the listings of impairments, specifically, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2013) ("listing 12.04"), and 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C) ("listing 12.06"). (Dkt. No. 8 at 10.) Defendant responds that because Plaintiff relies on the opinion of Dr. Patil for this argument, and the ALJ afforded little weight to that opinion, this argument should fail. (Dkt. No. 11 at 21.) For the reasons outlined below, it is recommended that the decision of the ALJ be affirmed in this respect.

To satisfy the requirements of listing 12.04, a claimant must demonstrate continuous or intermittent symptoms listed in Section A *and* at least two of the following: marked restriction in activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, and pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B) (2013). Alternatively, a claimant must show a medically documented chronic affective disorder of at least two years' duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental debands or change in the environment would be predicted to

cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

To satisfy the requirements of listing 12.06, a claimant must show specific symptoms listed in Section A *and* at least two of the following: marked restriction in activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (A)-(B). Alternatively, a claimant must show the specific symptoms listed in Section A *and* a complete inability to function independently outside the area of her home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C).

As discussed above, there is no evidence that Plaintiff suffers from problems in concentration, persistence, or pace, and she has suffered no more than one episode of decompensation. There is likewise no indication that Plaintiff suffers from a marked limitation in activities of daily living, and Plaintiff does not contest the findings of the ALJ regarding such activities. (Dkt. No. 8. at 10.) As such, even accepting Plaintiff's argument that she suffers from a marked limitation in social functioning, this is insufficient to satisfy the first test for either listing 12.04 or listing 12.06, which require two of the four conditions to be met.

Neither does Plaintiff meet either of the alternative tests. For listing 12.04, the Plaintiff must show a condition lasting at least two years, and the duration of the medical record of Plaintiff's mental condition begins in August 2010, and ends in October 2011. (T. at 344, 362.) Even assuming that this condition has lasted two years there is no evidence of repeated episodes of decompensation or a residual disease process such that a minimal change in mental demands

14

or environment would cause decompensation, as discussed above. Lastly, Plaintiff has not shown, and does not argue, that she cannot function outside a highly supportive living environment. For listing 12.06, Plaintiff has provided no evidence to indicate that she can not independently function outside her home. She successfully goes shopping, and her manner at all of her counseling sessions was appropriate, despite being outside her home. (T. at 174, 326-364.) This evidence does not support a finding that Plaintiff cannot function independently outside her home.

For the reasons outlined above, the ALJ's determination that Plaintiff's symptoms did not meet or medically equal the listings is supported by substantial evidence, and should be affirmed.

### C. Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining that Plaintiff retained the RFC to perform light work. (Dkt. No. 8 at 12.) Because Plaintiff's argument is almost entirely based on the opinion of Dr. Patil, which was properly afforded little weight, Plaintiff's argument is without merit. Insofar as Plaintiff also indicates that consultative examiner Dr. Noia's report supports an RFC less than that of "light work," it is noted that the report in fact indicates that Plaintiff is capable of performing the basic mental demands of unskilled work. (T. at 272.) Specifically, Dr. Noia opined that, while Plaintiff has "some difficulty" with stress, she is able to maintain attention and concentration for tasks, can regularly attend to a routine and maintain a schedule, she can learn new tasks, she can perform simple and some complex tasks with or without supervision, and she can understand and follow simple instructions. *Id*.

Lastly, Plaintiff's argument that the ALJ erred by failing to take vocational testimony is without merit. A vocational expert or other vocational evidence is only required at step five of

the five step analysis, once the Plaintiff has met her burden through step four. *Butts v. Barnhart*, 388 F.3d 377, 383-84 (2d Cir. 2004) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999)). Plaintiff was found not disabled at step four, and, as shown herein, that determination is correct. Thus vocational expert testimony was never needed. Therefore, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and should be affirmed.

**D.    Step Four Past Relevant Work**

Plaintiff argues that the ALJ miscategorized Plaintiff's past relevant custodial work as "light work," because it is designated by the Dictionary of Occupational Titles as a "medium" level occupation. (Dkt. No. 8 at 12.) Defendant argues that the occupation as Plaintiff actually performed it was at a "light" level, and that the step four determination is thus supported by substantial evidence. (Dkt. No. 11 at 24.) For the reasons set forth below, Defendant is correct.

At step four of the five step process, the ALJ asks whether the claimant can perform former relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed it. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (denying a claim where the plaintiff retained the ability to perform her former job as a seamstress).

Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. §§ 404.1567, 416.967 (2012). "Light work requires the ability to lift no more than twenty pounds, with lifting or carrying up to 10-pound objects frequently." *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). Medium work involves lifting

no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

Here, Plaintiff admittedly worked two different jobs at Nestlé, custodial and assembly line work. (T. at 34, 38.) She testified that, while performing her custodial work, the most she was required to lift was ten pounds. (T. at 67.) Regardless of how the Dictionary Occupational Titles categorizes this custodial position, Plaintiff actually performed it at a light level, and she has not met her burden to show that she could not perform the work as she actually performed it. Therefore, the decision of the ALJ in this regard is supported by substantial evidence, and should be affirmed.

VI. CONCLUSION

Because of the inconsistency concerning the opinion of Dr. Patil, Plaintiff's further arguments derived from that document are not persuasive. The ALJ's decision is based on the proper legal standard and supported by substantial evidence. For the foregoing reasons, it is recommended that the decision of the ALJ be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 8, 2014
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge